KRAMER et al., Appellants,

v.

ANGEL'S PATH, L.L.C., et al., Appellees.

[Cite as *Kramer v. Angel's Path, L.L.C.*, 174 Ohio App.3d 359, 2007-Ohio-7099.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–07–008.

Decided Dec. 31, 2007.

William H. Smith Jr., for appellants.

Kuly Hoty Lynch, for appellee Angel's Path, L.L.C.

Anastasia K. Hanson and Stephen M. Szuch, for appellee Fifth Third Bank.

---

SINGER, Judge.

{¶ 1} This appeal comes to us from a summary judgment issued by the Erie County Court of Common Pleas in a dispute over alleged damage to real estate. Because we conclude that the trial court properly granted summary judgment as to Fifth Third Bank, but erred in granting summary judgment to Angel's Path, we affirm in part and reverse in part.

{¶ 2} Appellants, William and Patricia Kramer, sued appellees Angel's Path, L.L.C., and Fifth Third Bank, alleging that construction in a housing development caused damage to their residence. Appellants' residence was located across from the entrance to the construction site. Appellants alleged the following

causes of action: public nuisance from blowing dust and dirt and mud tracked into the street and trespass from a lighted "promotional" sign that allegedly lighted the front of appellants' residence 24 hours per day.

{¶ 3} Angel's Path and Fifth Third Bank filed motions for summary judgment, which were each granted by the trial court.

{¶ 4} Appellants now appeal from those judgments, arguing the following two assignments of error:

{¶ 5} "Assignment of Error No. 1.

{¶ 6} "The trial court did not appropriately apply the provisions of Ohio Rule of Civil Procedure 56(C) in granting summary judgment in favor of Angel's Path.

{¶ 7} "Assignment of Error No. 2.

{¶ 8} "The trial court did not appropriately apply the provisions of Ohio Rule of Civil Procedure 56(C) in granting summary judgment in favor of Fifth Third Bank."

I

{¶ 9} In their first assignment of error, appellants assert that the trial court improperly granted summary judgment in favor of appellee Angel's Path. Appellants essentially argue that the trial court's grant of summary judgment was premature and that the facts presented established viable causes of action, even if misnamed in the complaint.

{¶ 10} The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court. Civ.R. 56(C); *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence [in the pending case,] and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact" and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

{¶ 11} A motion for summary judgment first compels the moving party to inform the court of the basis of the motion and to identify portions in the record that demonstrate the absence of a genuine issue of material fact. If the moving party satisfies that burden, the nonmoving party must then produce evidence as to any issue for which that party bears the burden of production at trial. Civ.R. 56(C); *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, limiting *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. Finally, an appellate court reviews summary

judgments de novo, that is, independently and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶ 12} Civ.R. 8(A) requires only that a pleading contain a short and plain statement of the circumstances entitling the party to relief and the relief sought. A party is not required to plead the legal theory of recovery or the consequences that naturally flow by operation of law from the legal relationships of the parties. *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512, 526, 639 N.E.2d 771. "The purpose of Civ.R. 8(A) is to give the defendant fair notice of the claim and an opportunity to respond." *Leichliter v. Natl. City Bank of Columbus* (1999), 134 Ohio App.3d 26, 31, 729 N.E.2d 1285.

{¶ 13} Civ.R. 8(F) also provides that "[a]ll pleadings shall be so construed as to do substantial justice." The rules make it clear that a pleader is not "bound by any particular theory of a claim but that the facts of the claim as developed by the proof establish the right to relief." Id., quoting McCormac, Ohio Civil Rules Practice (2d Ed.1992) 102, Section 5.01. See also *Fancher v. Fancher* (1982), 8 Ohio App.3d 79, 82, 8 OBR 111, 455 N.E.2d 1344. Thus, the labels used in a particular cause of action do not control the nature of the cause of action. *Funk v. Rent–All Mart, Inc.* (2001), 91 Ohio St.3d 78, 80, 742 N.E.2d 127; *Sprouse v. Eisenman*, 10th Dist. No. 04AP–416, 2005-Ohio-463, 2005 WL 289460, ¶ 8. The object is not absolute technical conformity, but substantial justice.

{¶ 14} Appellants first argue that the specific designation of "nuisance" or "trespass" should not prevent the assertion of their claims, as long as they have alleged facts that constitute some legal claim. We agree that the factual allegations control whether some legal cause of action has been properly pleaded and supported on summary judgment. Nevertheless, neither the defendants nor the court is required to research or discover every possible legal claim that may be supported by the facts. In this case, appellants' complaint included claims designated as nuisance and trespass. We will examine the record to determine whether any set of facts alleged or supported in appellants' response supports either of these claims.

### Nuisance Claim

{¶ 15} Nuisance law has been described as the most "impenetrable jungle in the entire law." *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d at 712, 622 N.E.2d 1153, quoting Prosser & Keeton, The Law of Torts (5th Ed.1984) 616, Section 86. "Nuisance" is defined as "the wrongful invasion of a legal right or interest." *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 432, 28 O.O. 369, 55 N.E.2d 724. "Wrongful invasion" encompasses the use and enjoyment of property or of personal rights and privileges. Id. Nuisance may be

designated as "public" or "private." *Brown*, 87 Ohio App.3d at 712, 622 N.E.2d 1153. A public nuisance is "an unreasonable interference with a right common to the general public." Id. A public nuisance will not arise because a large number of people are affected; rather, it arises only when a public right has been affected. Id. Certain conduct may be defined by statute or administrative regulation as being a public nuisance. Id.

{¶ 16} A public nuisance provides a basis for recovery of damages by individual plaintiffs only where the injury suffered is a "particular harm * * * that is of a different kind than that suffered by the public in general." Id. at 714, 622 N.E.2d 1153. To recover damages under a claim of public nuisance, the plaintiff must establish (1) an interference with a public right and (2) that the plaintiff has suffered an injury distinct from that suffered by the public at large. *Miller v. W. Carrollton* (1993), 91 Ohio App.3d 291, 295–296, 632 N.E.2d 582. Thus, the harm suffered by the plaintiff must be different in kind, rather than different in degree, from that suffered by other members of the public exercising the public right. Id. When the plaintiff exercises the public right "extraordinarily more" than the general public and where the plaintiff's reason for doing so "invariably amounts to a different kind of interest in the public right," the plaintiff will satisfy the special-injury rule. Id. at 296, 632 N.E.2d 582.

{¶ 17} In contrast, a "private nuisance" is "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Brown*, 87 Ohio App.3d at 712, 622 N.E.2d 1153. Unlike a public nuisance, a private nuisance threatens only one or few persons. *Taylor*, 143 Ohio St. at 442, 28 O.O. 369, 55 N.E.2d 724, citing *McFarlane v. Niagara Falls* (1928), 247 N.Y. 340, 160 N.E. 391. In order for a private nuisance to be actionable, the invasion must be either (a) intentional and unreasonable or (b) unintentional but caused by negligent, reckless, or abnormally dangerous conduct. *Brown*, 87 Ohio App.3d at 712, 622 N.E.2d 1153. If the conduct is abnormally dangerous, the court must balance the utility and benefit of the alleged nuisance against the invasion and harm caused. Id. at 712–713, 622 N.E.2d 1153.

{¶ 18} A nuisance may be "continuing or permanent." A continuing nuisance arises when the wrongdoer's tortious conduct is ongoing, perpetually generating new violations. *Haas v. Sunset Ramblers Motorcycle Club, Inc.* (1999), 132 Ohio App.3d 875, 726 N.E.2d 612, citing *Frisch v. Monfort Supply Co.* (Nov. 21, 1997), 1st Dist. No. C–960522, 1997 WL 722796. Conversely, a permanent nuisance occurs when the wrongdoer's tortious act has been completed, but the plaintiff continues to experience injury in the absence of any further activity by the defendant. *Haas.*

{¶ 19} "Nuisance" may be further divided into "absolute nuisance" and "qualified nuisance." An absolute nuisance, or nuisance per se, is based on intentional conduct or an abnormally dangerous condition that cannot be maintained without injury to property, no matter what precautions are taken. *State ex rel. R.T.G., Inc. v. State,* 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 59; see also *Metzger v. Pennsylvania, Ohio & Detriot RR. Co.* (1946), 146 Ohio St. 406, 32 O.O. 450, 66 N.E.2d 203, paragraph one of the syllabus (absolute nuisance consists of either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault).

{¶ 20} Strict liability is imposed upon an absolute-nuisance finding. *Taylor,* 143 Ohio St. 426, 28 O.O. 369, 55 N.E.2d 724, paragraph two of the syllabus; *State ex rel. Schoener v. Hamilton Cty. Bd. of Commrs.* (1992), 84 Ohio App.3d 794, 799, 619 N.E.2d 2. Strict liability will arise where one does or allows anything to be done "without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights." *Taylor,* 143 Ohio St. 426, 28 O.O. 369, 55 N.E.2d 724, paragraph two of the syllabus. Strict liability also attaches when there is "the violation of law resulting in a civil wrong or harm," especially when a safety statute is violated. Id. at 433, 28 O.O. 369, 55 N.E.2d 724. When the defendant commits an unlawful act that is deemed to be an absolute nuisance, the defendant becomes an "insurer" and will be liable for "loss resulting from harm which may happen in consequence of it to persons exercising ordinary care, irrespective of the degree of skill and diligence exercised by himself * * * to prevent such injury." Id. at 434, 28 O.O. 369, 55 N.E.2d 724.

{¶ 21} In contrast, "qualified" nuisance is premised upon negligence. A qualified nuisance is defined as essentially a tort of negligent maintenance of a condition that creates an unreasonable risk of harm. *State ex rel. R.T.G., Inc. v. State,* 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 59. A qualified nuisance is a lawful act "so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another." *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.* (1946), 146 Ohio St. 406, 32 O.O. 450, 66 N.E.2d 203, paragraph two of the syllabus. Under such circumstances, the nuisance arises from a failure to exercise due care. *Taylor,* 143 Ohio St. at 436, 28 O.O. 369, 55 N.E.2d 724.

{¶ 22} Even that which was lawful in origin may become a nuisance through "negligence in maintenance." Id. at 442, 28 O.O. 369, 55 N.E.2d 724, quoting *McFarlane,* 247 N.Y. 340, 160 N.E. 391. To recover damages for a

qualified nuisance, negligence must be averred and proven. *Brown,* 87 Ohio App.3d at 713, 715, 622 N.E.2d 1153; *Allen Freight Lines, Inc. v. Consol. Rail Corp.* (1992), 64 Ohio St.3d 274, 276, 595 N.E.2d 855. Thus, the allegations of nuisance and negligence merge, as nuisance claims rely upon a finding of negligence. *Allen.*

{¶ 23} In an action based upon the maintenance of a qualified nuisance, the standard of care is that care that a prudent man would exercise in preventing potentially or unreasonably dangerous conditions to exist; it is the same standard of care required of owners and occupiers of land toward business invitees. *Blair v. Ohio Dept. of Rehab. & Corr.* (Ct.Cl.1989), 61 Ohio Misc.2d 649, 658, 582 N.E.2d 673. This duty is "to exercise ordinary or reasonable care * * * so that the premises are kept in a reasonably safe condition." Id., citing *Drexler v. Labay* (1951), 155 Ohio St. 244, 44 O.O. 254, 98 N.E.2d 410. Whether a party's actions were reasonable is generally a matter for the trier of fact. See *Giffin v. Overberg* (Aug. 22, 1991), 10th Dist. No. 90AP–906, 1991 WL 224936 (genuine issues of fact as to whether neighbor's strobe-light security system was nuisance to adjacent landowner); *Tullys v. Brookside Condominium Assn.* (July 15, 1985), 5th Dist. No. CA–6604, 1985 WL 8275 (plaintiff presented evidence that she was subjected to an offensive, annoying, unpleasant source of light from the street light that repeatedly and continuously caused her extreme annoyance, hurt, and damage).

*Trespass*

{¶ 24} "Trespass is the unlawful entry upon the property of another." *Chance v. BP Chems., Inc.* (1996), 77 Ohio St.3d 17, 24, 670 N.E.2d 985. The elements of trespass include "(1) an unauthorized intentional act and (2) entry upon land in the possession of another." *Brown,* 87 Ohio App.3d at 716, 622 N.E.2d 1153.

{¶ 25} " 'A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * *.' " *Apel v. Katz* (1998), 83 Ohio St.3d 11, 19, 697 N.E.2d 600, quoting *Linley v. DeMoss* (1992), 83 Ohio App.3d 594, 598, 615 N.E.2d 631. Further, a claim exists "even though such damages may be insignificant." *Linley,* 83 Ohio App.3d at 598, 615 N.E.2d 631. Further, "trespasser" had been defined "as one who unauthorizedly goes upon the private premises of another without invitation or inducement, express or implied, but purely for his own purposes or convenience; and where no mutuality of interest exists between him and the owner or occupant." *Keesecker v. G.M. McKelvey Co.* (1943), 141 Ohio St. 162, 166, 25 O.O. 266, 47 N.E.2d 211.

{¶ 26} A person can be a trespasser without actually stepping onto another's property. See *Misseldine v. Corporate Investigative Serv., Inc.,* 8th Dist. No. 81771, 2003-Ohio-2740, 2003 WL 21234928, at ¶ 26. A trespass may be committed by invading the airspace of the property of another. Id., citing *Hannabalson v. Sessions* (1902), 116 Iowa 457, 90 N.W. 93. This principle is based upon the concept that an owner of land owns so much of the space above the ground as he can occupy or use. *Chance v. BP Chems., Inc.* (1996), 77 Ohio St.3d 17, 25, 670 N.E.2d 985; see also *Willoughby Hills v. Corrigan* (1972), 29 Ohio St.2d 39, 50, 58 O.O.2d 100, 278 N.E.2d 658.

{¶ 27} Having set out the applicable law pertaining to appellants' claims for nuisance or trespass, we will now examine whether appellants presented sufficient evidence to withstand summary judgment. In this case, Angel's Path argued on summary judgment that appellants' claim of "public nuisance" was negated by their admission that several other persons, including neighbors and others living nearby, suffered from the same excessive dirt and dust. Therefore, Angel's Path claimed that appellants had failed to establish a claim for nuisance because their injuries were no different that those suffered by the public in general. Angel's Path also argued that the light shining into appellants' home was not a trespass, and that appellants' claim related to those facts must also fail.

{¶ 28} Appellants answered, providing an affidavit with attached photos of the property across from their home and of their home. Appellants averred that beginning in the fall of 2002 through the spring of 2003, their home was in the pathway of "dirt and debris blown onto and into [their] home by the prevailing winds." Appellants further averred that the winds blew from the west to southwest across Angel's Path property, which was directly between the earthen mounds at the entrance to appellee's development. Appellants provided a summary of the National Weather Service records for the period of time between fall of 2002 and spring of 2003 indicating the direction of the prevailing winds.[1]

{¶ 29} Appellants further averred that the entrance-sign light, directly across from appellants' home, continuously lit up their home "in an annoying and harassing manner," including the three front bedrooms. Although appellants requested that Angel's Path turn off the light, appellants averred that it was not turned off until, coincidentally, John Hoty, an Angel's Path executive, had been deposed in the present action.

---

1. We note that portions of what appear to be depositions are also attached. Since nothing in these portions indicates who is being deposed, either in an affidavit or otherwise, and the complete depositions are not in the record, we cannot consider these portions as "admissible" evidence as required under Civ.R. 56.

{¶ 30} In their answers to interrogatories, which were filed with the court, appellants provided the following information. Appellant, William M. Kramer, stated that excessive mud was tracked into the street in front of his residence many times from fall of 2002 until late spring of 2003. He further claimed that the source of the dirt and mud was "from contractors and suppliers bringing products to the Defendants for the construction of the Angel's Path Subdivision, as they exited the construction site." Mr. Kramer also listed six other residence owners who expressed problems from the dust and dirt created by the Angel's Path construction. He further stated that he had contacted the Ohio Environmental Protection Agency ("EPA"), as had Joe Grob of the Bowling Green Ohio EPA office. Kramer attached eight EPA reports addressing his complaints regarding the excessive blowing dirt and dust, and the actions taken. These reports indicate that the EPA considered the dust and dirt blowing to be of some concern to health and safety and recommended actions that could possibly be taken by Angel's Path to alleviate the problem.

{¶ 31} Also, in answers to a second set of interrogatories, appellants averred that their damages included excessive dirt on their house, windows, and deck area that was continuously tracked onto carpets and floors inside the home. Appellants stated that they had already spent $444 in out-of-pocket expenses for pressure washing the outside of the house and for carpet cleaning inside the house, and had cost quotes for an additional $720 for exterior pressure washing and cleaning of first floor carpets. Approximately 20 photos were also provided, showing mud on the roadway and dust and dirt being blown from the Angel's Path construction site.

{¶ 32} Finally, appellants answered that they had a difficult time sleeping because Angel's Path entrance sign was "like a headlight shining into my bedroom window. The lights' reflections are directed into my bedroom window. This is a nuisance to the enjoyment of my property and home." Appellants further alleged violations and negligent acts for which Angel's Path was liable, in that "Angel's Path has allowed and enabled dirt to be blown onto my house. The dirt is on my porch, in my windows, and on my carpet and floors."

{¶ 33} Angel's Path and the trial court determined that since more than one person was affected by the alleged dirt and dust, a claim for "public" nuisance could not be sustained. Under this line of reasoning, a person creating a public nuisance could "escape" liability simply by harming more than one party. Nothing in the record indicates that every person listed in the interrogatories has been affected by the dirt, dust, or light in exactly the same way as appellants. Therefore, we conclude that genuine issues of material fact remain in dispute as to whether or not the particular damages alleged by appellants are specific to them or suffered by the public in general.

{¶ 34} Moreover, even presuming that appellants had no claim under public nuisance, we conclude that they may still have a claim for private nuisance. Although Angel's Path construction may be lawful, questions of fact remain as to whether they failed to exercise due care and were so negligent "as to create a potential and unreasonable risk of harm" resulting in the injuries and damages claimed by appellants.

{¶ 35} Finally, we recognize that appellants' complaint claimed that the light invasion onto their property was a "trespass," an unusual and perhaps creative application of trespass law. Arguably, one might assert that the light from the sign "physically" invaded the airspace over their property and caused damage because of the continuous and bright illumination of the outside and into the windows of their residence. We can find no Ohio cases, however, that have interpreted light to be a physical intrusion. Nevertheless, even if the facts alleged do not establish a trespass, we conclude, again, that genuine issues of material fact remain as to whether such facts may establish a public or private nuisance. Pursuant to Civ.R. 15(B), even though initially pleaded as a claim for trespass, appellants could request an amendment of the pleadings to include a claim for nuisance regarding the lighted sign to conform with the evidence.

{¶ 36} We additionally note that the trial court erred in its conclusion that since appellee at some point later removed or turned off the sign, appellants no longer had a claim for damages. Under a nuisance claim, the alleged interference with appellants' enjoyment of their property and the value of the damage caused by such interference is, again, a matter to be determined by a trier of fact. Although we agree that injunctive relief regarding the sign was no longer needed, the abatement or discontinuation of the light shining into appellants' home does not negate any alleged prior negligent actions or damages resulting from the time the nuisance still existed. Consequently, we conclude that, since genuine issues of material facts remain in dispute regarding the nuisance and trespass claims, Angel's Path is not entitled to judgment as a matter of law. Therefore, the trial court erred in granting summary judgment in favor of Angel's Path.

{¶ 37} Accordingly, appellants' first assignment of error is well taken.

## II

{¶ 38} In their second assignment of error, appellants argue that the trial court improperly granted summary judgment in favor of Fifth Third Bank.

{¶ 39} A mortgage of real estate is "regarded in equity as a mere security for the performance of its condition of defeasance, and where that condition is the payment of a debt, the security is regarded as an incident of the

debt." *Levin v. Carney* (1954), 161 Ohio St. 513, 518, 53 O.O. 390, 120 N.E.2d 92. In other words, a mortgage of real property is a security for a debt and gives the mortgagee no right of possession or control. Id. at 520, 53 O.O. 390, 120 N.E.2d 92. Consequently, absent any evidence of such a right of possession or control, a mortgagee bank has no ability to create or prevent a nuisance from arising on the mortgaged property. *Hausman v. Dayton* (1995), 73 Ohio St.3d 671, 679, 653 N.E.2d 1190.

{¶ 40} In this case, appellants' only allegation regarding liability by Fifth Third was that it held an interest in the development property as security for a revolving credit line issued to Angel's Path. Nothing in the record indicates that this security interest is any different than any other standard security or lien held by banks when issuing credit to its borrowers. Furthermore, appellants have provided nothing to indicate that Fifth Third could or did exercise any authority or control over the property or its design or development. Thus, we conclude that no genuine issues of material fact remain in dispute and Fifth Third is entitled to summary judgment as a matter of law. Therefore, the trial court properly granted summary judgment in favor of Fifth Third.

{¶ 41} Accordingly, appellants' second assignment of error is not well taken.

{¶ 42} The judgment of the Erie County Court of Common Pleas is affirmed in part and reversed in part. This case is remanded to the trial court for proceedings consistent with this decision. Appellants and Angel's Path are each ordered to pay one-half of the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.

Judgment affirmed in part
and reversed in part,
and cause remanded.

HANDWORK and OSOWIK, JJ., concur.